UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR265 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| ERICK JAMAL HENDRICKS, | ) | |
| | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

On August 25, 2016, the Court held a detention hearing in this matter. During the hearing, the Court received testimony and evidence and heard argument from counsel. At the conclusion of the hearing, the Court ordered that Defendant Erick Jamal Hendricks be detained. This order serves to memorialize the Court's oral statements made during the hearing.

**I. UNDERLYING FACTS**

Hendricks was indicted on August 17, 2016 in a single-count indictment, which alleges that he "knowingly did combine, conspire, confederate, and agree to provide 'material support or resource,'…including personnel and services, to a foreign terrorist organization, namely the

1

Islamic State of Iraq and the Levant (ISIL)…." Doc. 7. The affidavit attached to the Complaint further details the factual allegations forming the basis of the indictment. Doc. 1-1. According to the affidavit, the Government alleges that Hendricks recruited individuals to train together for the purposes of conducting terrorist attacks in the United States. Doc. 1-1 at ¶22. He allegedly recruited through different social media platforms and eventually escalated his efforts by traveling to other states to meet in person. The Government further alleges that Hendricks had ties to individuals involved in the attempted terrorist attack in Garland, Texas in 2015.

To avoid the watchful eyes of law enforcement, Hendricks allegedly performed and taught various countersurveillance techniques to new recruits. Doc. 1-1 at ¶45. For example, he purportedly used various social media outlets, where he changed usernames and communication platforms. He allegedly advised at least one person to use "Anonymizing Software" when accessing the Internet and social media to communicate with like-minded individuals. Doc. 1-1 at ¶38. He wrote a 19-page manual focused on counteracting law enforcement surveillance, providing technological advice, and communicating protocols for those planning to conduct terrorist attacks in the United States. Doc. 1-1 at ¶45. Consistent with the manual, Hendricks allegedly suggested to recruits that they change their cell phones in order to evade detection.

It is undisputed that Hendricks has very few, if any, contacts in the Northern District of Ohio. He acknowledges having family in Arkansas, but he was allegedly living in Texas or South Carolina during most of the allegations. Hendricks was ultimately arrested in Charlotte, North Carolina, where he had been living for one month.

On August 4, 2016, Hendricks appeared before United States Magistrate Judge David S. Cayer in the Western District of North Carolina for his initial appearance and was ordered

detained. On August 9, Hendricks again appeared before Magistrate Judge Cayer for a detention hearing. Hendricks was ordered detained and subsequently removed to the Northern District of Ohio.

Once in this District, Hendricks appeared for arraignment and was ordered temporarily detained. The Court then conducted a detention hearing on August 25, 2016. During the detention hearing, the Court heard testimony from an FBI Special Agent involved in the investigation. The Court then entertained argument from both defense counsel and the Government. At the conclusion of the hearing, the Court found that Hendricks had not overcome the presumption of detention and that he presented a flight risk and a danger to the community. The Court now issues this order to finalize its order of detention.

## II. DETENTION ANALYSIS

### A. Standard for Detention

The Bail Reform Act sets forth factors for this Court to consider in making its determination on whether to detain a defendant or to release him on bond.

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—

3

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C.A. § 3142(g).

Under the Bail Reform Act, where there is probable cause to believe that the defendant has committed an offense identified as a "[f]ederal crime of terrorism" under 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years or more is prescribed, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e).  Although the presumption shifts the burden of production to the defendant, the burden of persuasion remains with the government. *See United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir.1991). The court must find that a defendant is a danger to another person or the community by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B).

If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the pretrial detention standard is met: (1) the nature

and circumstances of the offense charged, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); s*ee United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986). The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in §3142(g)." *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986).

### B.  Nature and Circumstances of the Offense Charged

Hendricks has been charged with conspiracy to provide material support to ISIL, an organization that has publically announced an intent to inflict death and harm on individuals and nations perceived as enemies to its purpose and ideology. Consistent with these intentions, ISIL operatives have taken credit for various terrorist attacks in the United States and across the world, and they have demonstrated a willingness to be killed in furtherance of their acts of terror.

Consistent with these goals, the Government alleges that Hendricks has some connection to the attempted terrorist attack in Garland, Texas on May 3, 2015, in which two perpetrators were killed in the course of the attack. The Government also alleges that Hendricks recruited other individuals to join together in coordinated terrorist attacks. The Government alleges that Hendricks said he always carried an AK-47 with him and that he encouraged others to carry weapons at all times. He allegedly told people that he was trying to "get off the grid" in order to

5

prepare for a violent confrontation with law enforcement.

The acute danger presented by Hendricks' alleged conduct, along with his alleged knowledge and intent to evade detection by law enforcement, weighs strongly in favor of detention. Furthermore, Hendricks has offered no evidence or argument that would overcome the presumption of detention associated with the underlying charge.

### C. Weight and Evidence Against Hendricks

The Government's allegations are based on monitoring of various social media applications, along with the use of confidential witnesses, paid confidential informants, and undercover FBI employees. Much of the evidence is in writing, allegedly by Hendricks himself. This includes manuals allegedly written by Hendricks discussing how to evade surveillance and law enforcement while attempting to organize terrorist activity. Overall, the weight of the evidence does not overcome the presumption of detention. To the contrary, even if the Court was not guided by the presumption, the evidence weighs in favor of detention.

### D. History and Characteristics

Hendricks was raised in Little Rock, Arkansas. The majority of his family ties are in North Little Rock. He reports that he is self-employed as the owner and operator of a cell phone repair and re-sale company located in Charlotte, North Carolina. He admittedly has very few ties to the Northern District of Ohio.

Looking at Hendricks' criminal history, at 17 years old, he was charged with theft by receiving and fleeing in Little Rock, Arkansas. Two years later, he was charged with failure to appear. Over a decade later, Hendricks was living in Columbia, South Carolina, and was convicted of two traffic violations and charged with non-support.

6

Hendricks' history and characteristics do not overcome the presumption of detention. He has a portable job that can be conducted anywhere in the world, he has a history of fleeing encounters with law enforcement and failing to appear at court hearings; and he has few, if any, ties to this District. As such, this element weighs in favor of detention.

### E. Nature and Seriousness of the Danger to Any Person or the Community

The danger presented by the allegations in this case is significant. The Government alleges that Hendricks recruited people in an effort to create a terrorist cell that would conduct attacks on un-named persons and communities. These attacks are allegedly focused on killing and injuring as many people as possible. As such, the seriousness of the danger to individuals and the community is immense and would weigh in favor of detention, notwithstanding the presumption in this case.

### F. Modifications to Home and Conditions for Bond

Hendricks argues that the Pretrial and Probation Department could monitor or remove his computer and cell phones as a sufficient condition of bond. He also suggests wearing an ankle bracelet so that his physical location can be monitored. As discussed above, Hendricks is knowledgeable in the use of cell phones, computer technology, and countersurveillance. He allegedly wrote "the book" on evading law enforcement and overcoming surveillance. Even if Hendricks were to rid his house of a computer and smartphones, the risk to the community would not be mitigated.

If Hendricks were released on bond with his proposed conditions, Pretrial Services would have to make daily home visits, and even then, a visitor to the home could simply come by when the officer is not at the house. Additionally, someone could provide him with periodic access to

electronics brought into the home when the Pretrial Services officer is not present. Daily supervision is not feasible and even if it were, the Court is doubtful that daily visits would be effective in mitigating the danger to the community. If Hendricks would violate his release conditions, the allegations in this case indicate that the consequences could be catastrophic to the safety of the community and our nation.

I. CONCLUSION

Based upon the above, the Court finds that Hendricks has not overcome the presumption of detention. The Court further finds, by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure his appearance and the safety of the community. Defendant Hendricks, therefore, is ordered detained. A separate, formal order of detention shall issue accompanying this order.

IT IS SO ORDERED.


September 7, 2016                    */s/ John R. Adams*
                                                 JUDGE JOHN R. ADAMS
                                                 UNITED STATES DISTRICT JUDGE