**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA**,** | : | CASE NO. 1:16CR265 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JOHN R. ADAMS |
| vs. | : | |
| | : | |
| ERICK J. HENDRICKS, | : | **DEFENDANT'S REPLY IN SUPPORT** |
| | : | **OF MOTION FOR JUDGMENT OF** |
| Defendant. | : | **ACQUITTAL AND NEW TRIAL** |

The government's opposition rests on a fundamental misstatement of the law: supporting a terrorist organization is not the same as providing material support to an organization. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2014) (holding that "independent activity in support of a terrorist group" does not violate 18 U.S.C. § 2339B). The government erroneously equates taking actions to support a terrorist organization and its goals, or using its language and symbols— which *Holder* makes clear do not violate section 2339B—with working under the organization's direction and control or providing coordinated services to the organization, which would violate the statute.

Based on that flawed foundation, the government sets up a false choice, claiming that the only possibilities are that "[Mr. Hendricks] was conspiring or attempting to provide material support to ISIS" or that he "sought to create his own independent terrorist organization." Gov't Opp'n at 10. But there is a third possibility: Mr. Hendricks could have engaged in "independent activity in support of" ISIS, *Holder*, 561 U.S. at 24, which, according to the government's own expert, is

exactly what ISIS supporters in the West typically did, *see* Hendricks Mot. at 1-2. That third option—independent activity supporting ISIS—was the most that the evidence proved, taken in the light most favorable to the government, and does not violate 18 U.S.C. § 2339B.

## I.    Law & Argument

The government does not dispute that it did not present any evidence of communications where ISIS members directed Mr. Hendricks's actions, gave him instructions, or coordinated with him about actions he would take on behalf of ISIS, or any records of text messages, phone calls, social media discussions, or other communications between Mr. Hendricks and ISIS members at all. The government does not dispute that it did not present any evidence that Mr. Hendricks met with ISIS members or that he ever traveled overseas. And the government does not dispute that it did not present any evidence that Mr. Hendricks directed others to go overseas to join ISIS. Instead, the government claims it did not need to, because all it had to prove was "his intent." Gov't Opp'n at 13. But it introduced evidence of his intent (and actions) to support ISIS, not intent (and actions) to provide material support to the ISIS organization, i.e., to provide personnel to act under their direction or control, or provide services to the ISIS organization. The statute criminalizes the latter, not the former. *See* 18 U.S.C. § 2339B(h) (defining providing "personnel" to a designated foreign terrorist organization as providing one or more persons "to work under that terrorist organization's direction or control"); *Holder*, 561 U.S. at 24 ( "[I]f independent activity in support of a terrorist group could be characterized as a 'service,' the statute's specific exclusion of independent activity in the definition of 'personnel' would not make sense").

2

None of the cases cited by the government support its claim that it introduced sufficient evidence without any records of text messages, phone calls, social media discussions, or other communications between Mr. Hendricks and ISIS members (much less without records where ISIS members directed his actions or coordinated with him about actions he would take on ISIS's behalf). The government says that it "did not need to prove that Hendricks successfully provided material support to ISIS," relying on *United States v. Kaziu*, 559 F. App'x 32 (2d Cir. 2014). But it did need to prove that Mr. Hendricks tried or agreed to provide material support to ISIS. In *Kaziu*, the defendant traveled to Somalia with the intent to join with al-Shabaab, a designated foreign terrorist organization fighting in Somalia. 559 F. App'x at 37. Had he successfully joined al-Shabaab, he would have provided personnel—himself—to the organization and thereby violated the statute. In contrast, even if Mr. Hendricks successfully recruited a cell of independent ISIS supporters in the United States, and even if he carried out training and attacks, he would not have provided personnel to act under ISIS's direction or control. He likely would have violated other criminal laws, but he would not have provided material support to a foreign terrorist organization.

The government says that it "need not prove that Hendricks had actual contact with ISIS in Syria," relying on *United States v. Suarez*, 893 F.3d 1330, 2018 U.S. App. LEXIS 17631 (11th Cir. 2018). Gov't Opp'n at 13. But it did need to prove that Mr. Hendricks "directed (or attempted to direct) his services <u>to ISIS</u>." *Suarez*, 2018 U.S. App. LEXIS 17631 at *9 (emphasis added); *see also Holder*, 561 U.S. at 24 ("The statute prohibits providing a service '<u>to</u> a foreign terrorist organization." (emphasis in *Holder*)). In *Suarez*, the defendant made recruitment videos and dis-

3

cussed attacks with an informant and undercover agents who he believed were actual ISIS members, and planned to detonate bombs as they instructed. 2018 U.S. App. LEXIS 17631 at *9. Thus, the evidence was sufficient to prove that he attempted to direct his services to the benefit of a foreign terrorist organization, because his "mistaken believe that the government informant and undercovers were actual ISIS members is not a defense to his attempted crime." *Id.* In contrast, the government did not introduce evidence of communications that Mr. Hendricks had with actual ISIS members or with purported ISIS members. Without that evidence, a jury could not find beyond a reasonable doubt that he worked or attempted to work under ISIS's direction or control, or that he provided services or attempted to provide services to the ISIS organization, except by relying on a chain of unsupported inferences. *See* Hendricks Mot. at 7-8.

The government says that "[t]he distribution of propaganda on behalf of a terrorist organization can be a form of material support," relying on *United States v. Mustafa*, 406 F. App'x 526 (2d Cir. 2011). Gov't Opp'n at 17. But the key phrase in *Mustafa* is "on behalf of." In that case, after traveling to jihadi training camps, the defendant hosted training manuals and propaganda on a website on a terrorist organization's behalf. *Mustafa*, 406 F. App'x at 530. In contrast, the government introduced evidence that Mr. Hendricks posted his own documents and distributed other materials at his own direction, and not on an organization's behalf. To the extent the government argues that *Mustafa* means that a defendant can be convicted of providing material support by distributing propaganda independently of a foreign terrorist organization, *Holder* makes clear that is not the law. *See Holder*, 561 U.S. at 24 (holding that "independent activity in support of a terrorist group" does not violate 18 U.S.C. § 2339B).

The difference between "support" and "providing material support" undermines each of the government's arguments about what the evidence established:

*1. Brains-and-Limbs Analogy.* The username "hereafter" told an undercover FBI agent that "every body has a brain in order to operate the limbs" and that "a brain is needed" in the United States so that "the limbs grow." The statement that "a brain is needed" establishes that the user sought to engage in independent activity supporting ISIS, not directed or controlled by ISIS. The government argues that later statements showed that ISIS was controlling his actions because he wrote, "ultimately the brain is the khilafa." Gov't Opp'n at 14. But that ignores what the user actually wrote: that "all of the ummah"—that is, the entire worldwide Muslim community, R. 92, Trial Tr. at 930, PageID #1521 —"is one body," so "ultimately the brain is the khilafa." Thus, the user was stating his support for ISIS as the head of all Muslims, not indicating that he was indi- vidually directed and controlled by ISIS. This, again, was consistent with what the government's expert expert said ISIS's independent supports did in the West. *See* Hendricks Mot. at 1-2. The user may well have hoped that ISIS one day would establish a province in the United States or take over the world, but that would make him an ISIS supporter, not a person providing material support to ISIS. The government simply inserts the words "controlling" and "under ISIS control" as if that is what the evidence said, Gov't Opp'n at 15, but does not (and cannot) point to any place where the user said ISIS directed or controlled particular actions, or records of ISIS directing or control- ling particular actions. *See* 18 U.S.C. § 2339B(h) (defining providing "personnel" to a foreign terrorist organization as providing one or more persons "to work under that terrorist organization's direction or control").

*2. "Senior Brothers."* The government claims that "in context" it is "clear" that "senior brothers" means ISIS leaders. Gov't Opp'n at 16. The government uses the word "context" as cover for speculation. The government concedes that it did not introduce any evidence that Mr. Hendricks had contact with actual ISIS members, claiming that it did not need to. *See* Gov't Opp'n at 13. Throughout his communications, the user referred to all ISIS supporters, and even potential supporters, as "brothers," including several that nobody contends were ISIS members. As explained in Mr. Hendricks's motion, a jury could not find beyond a reasonable doubt that "senior brothers" meant that actual ISIS members directed or controlled Mr. Hendricks's actions without relying on a chain of unsupported inferences. *See* Hendricks Mot. at 7-8.

*3. The "New Era" Document.* The government argues that, by mentioning ISIS's leader and using the ISIS flag, the "New Era" document shows that Mr. Hendricks conspired or attempted to provide material support to ISIS. Gov't Opp'n at 17. Not so. Again, supporting ISIS's leader and using its symbols indicates that the document's author supported ISIS, but that is not the same as providing material support to ISIS. There was no evidence that Mr. Hendricks posted the document on behalf of ISIS, rather than on his own initiative. *See* Hendricks Mot. at 7. In fact, there was evidence of the opposite: he asked Amanda Amaro to share it with alleged ISIS members *after* posting it. *See* Gov't Opp'n at 17-18. That does not indicate coordinating services that he providing to ISIS; it indicates independent activity, with the hope that ISIS *post hoc* would approve of what was already done. Once more, that is exactly what ISIS supporters in the West typically did, according to the government's own expert. *See* Hendricks Mot. at 1-2. But it does not amount to conspiring or attempting to provide personnel or services to the ISIS organization.

*4. Other Evidence.* The government lists several pieces of evidence that, it claims, showed that Mr. Hendricks's intent was to provide material support to ISIS—for example, that he had a "high degree of understanding of ISIS ideology," that he encouraged others to read and follow guidance for ISIS supporters, and that he expressed support for ISIS. *See* Gov't Opp'n at 18-19. This is perhaps the best illustration of the government's error. The government's examples all are evidence that Mr. Hendricks knew much about ISIS, embraced the group's ideology, and supported ISIS and its goals. But that is evidence that he supported ISIS, not that he provided material support to ISIS. It is evidence that he wanted to act to advance ISIS and its goals, but not that he agreed or tried to provide personnel to act under ISIS's control or to provide services to the ISIS organization.

*5. Alleged Co-Conspirators.* The same flaw permeates the government's arguments about Mr. Hendricks's alleged co-conspirators. The government recites several pieces of evidence showing that Mr. Hendricks agreed with others in supporting ISIS. But none of that evidence showed that they agreed to provide personnel to act under ISIS's direction or control or to provide services to the ISIS organization. For example, the government recites evidence that Mr. Hendricks and his wife wrote documents supporting ISIS and encouraged others to listen to lectures advocating for ISIS ideology. *See* Gov't Opp'n at 21. That is evidence of an agreement between Mr. Hendricks and his wife to support ISIS and spread its ideology, but not to provide personnel or services to the ISIS organization. The government implicitly concedes this very point—it refers to Mr. Hendricks and his wife having a "common agreement to support ISIS." Gov't Opp'n at 21. But supporting ISIS is not the same as providing material support to ISIS and is insufficient to convict a defendant of violating 18 U.S.C. § 2339B. *See Holder*, 561 U.S. at 24.

7

## II.    Conclusion

There was insufficient evidence that Mr. Hendricks tried or agreed to provide any person to act under ISIS's direction or control, or tried or agreed to provide services to the ISIS organization. The most government's evidence showed was that he supported ISIS, was inspired by ISIS, and took independent actions to support ISIS. Whatever crimes those actions may amount to, under *Holder*, they do not violate 18 U.S.C. § 2339B. Thus, the Court should enter a judgment of acquittal on the charges of attempting and conspiring to provide material support to a designated foreign terrorist organization. Additionally, even if the government had introduced sufficient evidence, because the evidence heavily preponderates against the verdict, the Court should grant a new trial.[1].

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928


*/s/EDWARD G. BRYAN*_____
EDWARD G. BRYAN
Assistant Federal Public Defender
Ohio Bar:  0055556
CHRISTIAN J. GROSTIC
Ohio Bar: 0084734
1660 West Second Street, #750
Cleveland, OH 44113

---

[1] The government refers to Mr. Hendricks's motion for a new trial as a "conditional motion." *See, e.g.*, Gov't Opp'n at 27. That is not accurate. Mr. Hendricks moved for judgment of acquittal and for a new trial. The Court must rule on Mr. Hendricks's new-trial motion regardless, because under Rule 29, a court must conditionally rule on a defendant's motion for a new trial even if it grants a judgment of acquittal. *See* FED. R. CRIM. P. 29(d)(1).

8

(216)522-4856   Fax: (216)522-4321
Email: edward_bryan@fd.org
christian_grostic@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2018, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/EDWARD G. BRYAN
EDWARD G. BRYAN
Assistant Federal Public Defender