UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR265 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | <u>ORDER</u> |
| ERICK JAMAL HENDRICKS, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Erick Jamal Hendricks' motion for acquittal and in the alternative for a new trial. The motion is DENIED.

**I.     Factual Background**

On August 17, 2016, a grand jury indicted Hendricks on one count of conspiracy to provide material support or resources to a foreign terrorist organization, namely ISIS. On December 13, 2016, a superseding indictment charged Hendricks with one count of conspiracy to provide material support or resources to ISIS and one count of attempting to provide material support and resources to ISIS. On March 2, 2018, the Court started jury selection, and a jury was seated on March 7, 2018. Opening statements and evidence began on March 9, 2018, and the Government continued its presentation until March 14, 2018. On March 14, 2018, both the Government and

Hendricks rested their cases. Closing arguments and jury instructions were given on March 19, 2018, and the jury began its deliberations. On March 20, 2018, the jury found Hendricks guilty of both counts contained in the superseding indictment.

On April 12, 2018, Hendricks filed a pro se motion seeking new counsel. The Court granted Hendricks motion on April 27, 2018 and appointed the Federal Public Defender as counsel for Hendricks. On July 13, 2018, Hendricks' new counsel filed a motion for acquittal and new trial. The Government opposed the motion on July 31, 2018, and Hendricks replied in support on August 9, 2018. The Court now resolves Hendricks' arguments.

**II.     Legal Standard**

Hendricks has moved for acquittal under Rule 29 and conditionally a new trial under both Rule 29 and Rule 33. In this context, the two rules are similar, but "are governed by different standards of review." *United States v. Dimora*, 879 F. Supp. 2d 718, 724 (N.D. Ohio 2012).

A. Rule 29

A Rule 29(c) motion for judgment of acquittal is a challenge to the sufficiency of the evidence, raised following a jury verdict or discharge. When reviewing a sufficiency of the evidence claim, a court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "A defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995). This Court must draw all inferences from the evidence in favor of the prosecution. *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995).

When evaluating a motion under Rule 29(c), this Court can neither independently weigh

the evidence, nor judge the credibility of the witnesses who testified at trial. *See United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). After a review of the evidence, a court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not "'remove every reasonable hypothesis except that of guilt.'" *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir.1991)). In making this evaluation, the sufficiency of the evidence must be viewed in terms of the entirety of the record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *Id.*

  B. Rule 33

Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The rule "does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). However, "it is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

A motion for a new trial under Rule 33(a) "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). However, a motion for a new trial under Rule 33(a) should only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* In considering a Rule 33(a) challenge to a conviction based on the weight of the evidence, a court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that ... [the judge] sits as a

thirteenth juror." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).[1]

### III. Analysis

Hendricks first contends that the evidence on both counts was insufficient to convict him and that the verdicts were against the manifest weight of the evidence because the Government did prove that he provided material support *to* ISIS. Specifically, Hendricks contends that the evidence, even viewed in a light most favorable to the Government, solely established that he engaged in some form of independent advocacy of the beliefs of ISIS. The Court finds no merit in this contention.

Hendricks properly notes that the source of his argument resides in the Supreme Court's decision, *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).

> Providing material support that constitutes "personnel" is defined as knowingly providing a person "to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." § 2339B(h). The statute makes clear that "personnel" does not cover *independent* advocacy: "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." *Ibid*.
>
> "[S]ervice" similarly refers to concerted activity, not independent advocacy. *See* Webster's Third New International Dictionary 2075 (1993) (defining "service" to mean "the performance of work commanded or paid for by another: a servant's duty: attendance on a superior"; or "an act done for the benefit or at the command of another"). Context confirms that ordinary meaning here. The statute prohibits providing a service "*to* a foreign terrorist organization." § 2339B(a)(1) (emphasis added). The use of the word "to" indicates a connection between the service and the foreign group. We think a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause.

*Id*. at 23–24 (emphasis in original).

---

[1] As Hendricks' arguments fail under either standard, the Court reviews them under the more favorable-to-Hendricks manifest weight standard.

>In support of his argument, Hendricks asserts:
>
>>The government did not present any records of text messages, phone calls, social media discussions, or any other communications between Mr. Hendricks and ISIS members, much less evidence of communications where ISIS directed Mr. Hendricks's actions, gave him instructions, or coordinated with him about actions to take on behalf of ISIS. The government did not present any evidence that Mr. Hendricks met with ISIS members or that he ever traveled overseas. And the government did not present any evidence that Mr. Hendricks directed others to go overseas to join ISIS.

Doc. 137 at 6-7.

Initially, the Court notes that Hendricks was charged with conspiracy and attempt to provide material resources. Accordingly, the Government was not required to prove that Hendricks successfully completed any of his actions. "[I]t is irrelevant that he did not make contact with ISIS, because the law requires only that [Defendant] directed (or attempted to direct) his services to ISIS. And [Defendant's] mistaken belief that the government informant and undercovers were actual ISIS members is not a defense to his attempted crime." *United States v. Suarez*, 893 F.3d 1330, 1335 (11th Cir. 2018).

Hendricks' argument, however, is not limited to his contention that he was unsuccessful in contacting or ISIS (or that the Government failed to demonstrate that he successfully contacted ISIS). Hendricks also focuses upon the language in *Humanitarian Project* §2339B does not cover independent advocacy. Based upon that authority, Hendricks asserts that the Government proved only that he engaged in independent advocacy of ISIS and its views. The record does not support such an argument.

During his text messaging with then-undercover Special Agent Steven Jane, Hendricks offered an analogy. Hendricks explained that "[e]very body has a brain in order to operate the limbs." Trial Ex. 5. When questioned by Jane about this analogy, Hendricks indicated that "We

are constructing the brain." Trial Ex. 5. Hendricks is correct that this statement, standing alone, suggests that he was engaged in independent support of ISIS and its views. Hendricks' communications with Jane, however, did not end with that statement. Instead, Jane asked whether the "brain" Hendricks was constructing was "our own brain" or "[c]onnected to the ultimate brain." Hendricks replied that it was connected to the ultimate brain – which Hendricks identified as the khilafa. Despite his arguments to the contrary, the record does not support a conclusion that Hendricks was referencing some generic association with ISIS ideology. Instead, he directly informed Jane that their future terror cell would be connected and controlled by ISIS.

Hendricks' assertions regarding the other circumstantial evidence supporting this conclusion are similarly unavailing. On numerous occasions, Hendricks told Jane that he had been in contact with "senior brothers" and had received advice from them. Hendricks contends that he referred to all ISIS supporters as "brothers" regardless of whether they had any formal affiliation with ISIS. Again here, Hendricks attempts to isolate this piece of evidence without placing into context with all of the evidence presented. First, Hendricks ignores his qualifier, "senior," when referencing these brothers. Second, Hendricks ignores that he was referencing whether Jane should make hijrah, a migration to Islamic land to join ISIS, when he referenced "senior brothers."[2] As such, the most logical inference to be drawn from the evidence presented is that Hendricks was referencing "senior" members of ISIS.

Hendricks' own words, therefore, defeat any assertion that he was attempting to engage in independent support of ISIS. Instead, Hendricks expressly stated that he intended to connect his terror cell directly to ISIS and thereafter be controlled by ISIS.

---

[2] Dr. Lorenzo Vidino testified for the Government that the advice that Hendricks claimed to have received from "senior brothers" was entirely consistent with the views espoused by ISIS leadership during that timeframe.

Hendricks claims that his conspiracy conviction suffers from the same flaw rejected above. "For each alleged co-conspirator, though, the government cannot identify any agreement with Mr. Hendricks to provide personnel to act under ISIS's direction or control, or to engage in concerted activity with ISIS to provide services to that organization, as opposed to independent activity." Doc. 137 at 9. Having disposed of this argument above, the Court has no reason to reiterate its reasoning a second time.

While Hendricks has not precisely argued any other theory that the Government failed to prove other aspects of his conspiracy conviction, he does appear to argue that his actions with his wife, Tyrinda Hendricks, were insufficient to prove the "agreement" necessary for his conviction. Specifically, Hendricks again contends that his actions only demonstrated a support for ISIS and not an offer to supply ISIS with personnel or services. In so doing, Hendricks does not address his interactions with Amanda Amaro or Amir Al-Ghazi. With respect to Al-Ghazi, testimony reflected that Hendricks used a secure chat application to ask whether Al-Ghazi would "be willing to come to Texan and train, that he was a recruiter." Doc. 95 at 105. At that time, Hendricks did not openly state that he was recruiting for ISIS. However, Al-Ghazi understood the request to be an invitation to form a cell of ISIS based upon his prior interactions with Hendricks' online persona. Hendricks also asked Al-Ghazi whether there were "any brothers willing to – that felt the same as I did." Al-Ghazi indicated that he knew at least one other individual and put that individual in touch with Hendricks. Al-Ghazi's actions were more than sufficient to establish his agreement to join the conspiracy. Accordingly, any argument regarding Tyrinda Hendricks (and Amanda Amaro for that matter) cannot alter the propriety of the jury's verdict.

### IV. Conclusion

Based upon the above, neither of Hendricks' convictions are against the manifest weight

of the evidence. Moreover, there exists no other reason to suppose the Court ordering a new trial in this matter. Hendricks' motion for acquittal and/or a new trial is DENIED.

IT IS SO ORDERED.


January 9, 2019    /s/ John R. Adams
Dated              JUDGE JOHN R. ADAMS
                   United States District Judge