ADAMS, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR265 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| ERICK JAMAL HENDRICKS, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I. Introduction**

On February 4, 2019, the Court conducted Defendant Erick Jamal Hendricks' sentencing hearing. During that hearing, the Court imposed a total sentence of 180 months of incarceration. This memorandum will serve to supplement the Court's rulings during the sentencing hearing.

**II. Sentencing Process**

Criminal sentencing is often described as a three-step process. A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory

guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

**III. Analysis**

   A) <u>Terrorism Enhancement</u>

The parties disagreed over only a single enhancement during Hendricks' sentencing, albeit a significant one. Hendricks argued that the 12-level enhancement under U.S.S.G. § 3A1.4 should not apply based upon the facts that supported his conviction. The Government, in contrast, asserted that the evidence supported the application of the enhancement.

> U.S.S.G. § 3A1.4 provides:
>
> (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.
>
> (b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

In turn, 18 U.S.C. § 2332b(g)(5) defines a "federal crime of terrorism" as an offense that 1) violates

a set of enumerated statutes and 2) "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." The parties agree that Hendricks' convictions are included within the enumerated statutes set forth in § 2332b. However, they disagree over whether the evidence presented in this matter demonstrates that Hendricks' conduct was directed toward the government in a manner designed to influence or affect the conduct of the government.

The Sixth Circuit has explained that "[i]n order for the sentencing court to apply a terrorism enhancement, the government must show by a preponderance of the evidence that the two requirements of § 2332b have been met." *United States v. Wright*, 747 F.3d 399, 407 (6th Cir. 2014). *Wright* further explained the second element of the enhancement as follows:

> This court has not yet addressed in detail the meaning of the phrase "calculated to influence or affect the conduct of government." Other circuits have interpreted it as imposing a specific intent requirement. We agree with this interpretation and the general principles developed by the courts that have followed it.
>
> A defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind. Long-term planning, however, is not required. Nor is it necessary that influencing the government be the defendant's ultimate or sole aim. For example, a defendant who provided material assistance to terrorist organizations, but claimed that his goal was to assist an oppressed group of Muslims, is eligible for the enhancement regardless of his purportedly benign motive.
>
> Furthermore, specific intent may be found even if the record does not contain direct evidence of the defendant's particular frame of mind. In *Dye*, for instance, this court upheld the district court's application of the enhancement based on its "natural inference" that the defendant's offense—firebombing the office of a judge's bailiff—illustrated that he had the necessary intent.

*Id*. at 408-09 (citations and footnotes omitted). However, "the terrorism enhancement has been

held inapplicable to a defendant who aimed to victimize only private persons, even though his actions might have indirectly affected government operations." *Id.* at 409 (citing *United States v. Leahy*, 169 F.3d 433, 445–48 (7th Cir.1999)). In this final regard, the Court must be cautious to differentiate between "motive" and "calculation." The Second Circuit explained this important distinction:

> Section 2332b(g)(5)(A) does not require proof of a defendant's particular motive. "Motive" is concerned with the rationale for an actor's particular conduct. "Calculation" is concerned with the object that the actor seeks to achieve through planning or contrivance. Calculation may often serve motive, but they are not, in fact, identical. Section 2332b(g)(5)(A) does not focus on the defendant but on his "offense," asking whether it was calculated, i.e., planned - for whatever reason or motive - to achieve the stated object. Thus, as we noted in *Stewart*, the section is better understood as imposing a requirement that the underlying felony be calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Clearly, a person may intend and may commit an offense that is so calculated even if influencing or retaliating against government is not his personal motivation. Thus, a person who murders a head of state, for instance, sure in the knowledge that his crime will influence or affect the conduct of government, satisfies the terms of § 2332b(g)(5)(A) even if his particular motivation in committing the murder is to impress a more established terrorist with his abilities.

*United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010) (citations and quotations omitted).

Hendricks argues that the enhancement should not apply because the evidence at trial reflected that his activities were directed solely at the organizer of the "Draw the Prophet Muhammed" contest. Hendricks' argument fails for numerous reasons. First, Hendricks ignores that when he directed the undercover officer to Garland, Texas, Hendricks inquired numerous times about the presence of law enforcement. Hendricks' recognition of the presence of a significant number of law enforcement personnel allows for the natural inference that the attack on the event would also be an attack on those government officials. After the attack, Hendricks

left no doubt that such an inference was correct when he caused "The New Era" document to be published online and actively threatened those that would be protecting the event. As *Wright* noted, the application of the enhancement is proper when a defendant targets a government facility or personnel. *Wright*, 747 F.3d at 409.

Additionally, Hendricks' argument against the enhancement solely focuses upon the Garland, Texas attack. The evidence at trial against Hendricks encompassed much more than the Garland, Texas event. The Government established through its evidence that Hendricks desired to recruit and train ISIS followers within the United States. Hendricks desired to obtain land in a desolate area of the country to allow him to train these followers without Government intervention. Dr. Lorenzo Vidino opined that ISIS followers would view this activity as an attempt to establish a "willayah" or province of ISIS. Indeed, one of Hendricks' co-conspirators, Amanda Amaro, testified that she believed from her conversations with Hendricks that he intended to establish an extension of ISIS in the United States. The establishment of such a province in the United States would beyond dispute be antithetical to the United States government. As such, the Government provided ample evidence that Hendricks' actions were "calculated to influence or affect the conduct of government." Accordingly, the terrorism enhancement is properly applied in calculating Hendricks' advisory guideline range.

Following application of the enhancement, Hendricks' advisory guideline range was 360 months to life. As the statutory maximum based upon two counts of conviction was 360 months, Hendricks' final guideline range became 360 months.

B) § 3553(a) Factors

Initially, the Court notes that the Government is correct that Sixth Circuit precedent (*See United States v. Mainville*, 9 F.App'x. 431, 435 (6th Cir. 2001)) and the sentencing guidelines (U.S.S.G. § 5G1.2(d)) permit the Court to run Hendricks' sentences consecutively. As the statutory maximum on each count is 15 years, the Court would be required to impose the maximum on both counts and run the sentences consecutively simply to reach the advisory guideline range. While the Government has amply explained the Court's ability to run the sentences consecutively, the Court's independent review of the § 3553(a) factors does not warrant a sentence of 360 months.

1. **Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

The Court's review of these two factors is, by necessity, overlapping. Under the facts that were presented to the jury in this case, the Court cannot review the nature of the offense without also considering Hendricks' history and characteristics.

Hendricks was 37 at the time of sentencing with no prior criminal history as an adult. His sole prior conviction was for theft by receiving in Arkansas when he was 17. During sentencing, the Court heard from Hendricks' mother and several of his children/step-children. The family painted a view of Hendricks as a caring son and father, but none seemed to know about his affinity for ISIS and its ideology. However, the views espoused by the family members did align with the Court's own observation that Hendricks was consistently polite and respectful throughout the proceedings.

Following the Court's oversight of the jury trial in this matter, there can be no dispute that Hendricks engaged in a conspiracy and attempted to provide material support to ISIS. Online and

subsequent in-person discussions made Hendricks' goals unmistakable. Hendricks desired to form an ISIS terror cell within the United States. He attempted to accomplish this act primarily through social media and other online platforms. He sought out those with similar ideologies and attempted to band them together. Hendricks made clear that one of his targets would remain anyone involved with running the Draw the Prophet Muhammad contest.

Hendricks' conduct, however, is tempered by several factors. First, Hendricks was never really in a position to successfully complete his plan. The Government was able to quickly infiltrate Hendricks' circle of online confidants and monitor his activity. Second, and perhaps more importantly, the record does not reveal that Hendricks ever had the wherewithal to complete any of his plans. In other words, Hendricks talked a good game in his online interactions, but there appears to be very little substance behind his talk. While Hendricks explored the purchase of land, nothing reveals that he ever had the means to make any purchase. While Hendricks discussed some form of clandestine training of this terror cell, there is nothing to indicate that he had any of the knowledge or skill required to lead such training. While espousing the ISIS ideology and engaging in the conduct that he did led to Hendricks' properly being convicted, the record does not reflect that Hendricks was an imminent threat to life and property within the United States.

2. **Sentences Available and the Need for the Sentence Imposed**

There is no question that Hendricks engaged in a serious criminal offense. ISIS. Terrorism. Those terms alone would likely be enough for an ordinary citizen to insist that Hendricks spend the rest of his life in prison. However, when issuing its sentence, the Court must

be mindful of specific deterrence, general deterrence, and the sentences available. With a 15-year sentence, Hendricks will be nearly 50 when he exits prison. With limitations on his ability to obtain terrorism-related propaganda and access to social media while he is on lifetime supervised release, the Court believes that specific deterrence will be achieved.

With respect to general deterrence, a significant sentence is required to deter anyone that wishes to aid a terror organization. However, in evaluating how significant the sentence must be, the Court returns to the underlying facts of Hendricks' convictions. Those facts almost entirely overlap. Hendricks' convictions for conspiracy and attempt do not involve separate and discrete acts – nor are they legally required to do so. However, the decision to charge Hendricks with both counts altered his possible maximum sentence – raising it from 15 years to 30 years. While the Government is correct that a conspiracy charge inherently involves the addition of others to the crime and therefore increases the risk of harm to the public, the facts presented here do not warrant a leap from 15 years to 30 years based upon the conspiracy.

As detailed above, Hendricks may have held genuine aspirations of becoming some type of ISIS leader in the United States. Those aspirations led him to contact others. However, he also had very little in the way of concrete plans to put together this group. He did not have a place to house them. He did not have weapons to provide them. He did not have monetary resources to utilize. Instead, he had what the Government presented during its case – much talk. Make no mistake, Hendricks' ability to convince others to join him in his quest to form a terror cell warrants significant prison time. It does not, however, warrant a sentence that would ensure Hendricks is a senior citizen when he exits prison.

Based upon all of the above and for the reasons stated on the record, the Court finds that a prison sentence of 180 months is sufficient but not greater than necessary.

## IV. Conclusion

For the reasons stated herein and on the record during Hendricks' sentencing hearing, the Court imposed a total sentence of 180 months incarceration. All other terms and conditions of Hendricks' sentence were stated on the record and will not be reiterated herein.

IT IS SO ORDERED.

 March 19, 2019  /s/John R. Adams
Date JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE