UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERICK JAMAL HENDRICKS, | ) | |
| | ) | CASE NO. 1:16CR265 |
| Petitioner, | ) | 1:21CV1605 |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ORDER** |
| Respondent. | ) | |
| | ) | |

Pending before the Court is Petitioner Erick Jamal Hendricks' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. Doc. 165. Upon review, the motion is DENIED.

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

Hendricks' motion contains six grounds for relief that the Court has summarized for ease below:

Ground One – Newly discovered evidence supports a finding that Hendricks is actually innocent.

Ground Two – Hendricks' conviction was not the result of a unanimous jury verdict.

> Ground Three – Hendricks' trial counsel was ineffective.
>
> Ground Four – Hendricks' appellate counsel was ineffective.
>
> Ground Five – The prosecution engaged in misconduct.
>
> Ground Six – The cumulative impact of the errors in Grounds One through Five mandate vacating Hendricks' conviction.

The Court will not review each of Hendricks' arguments.

**I. Background**

A superseding indictment was filed against Hendricks on December 13, 2016. In that indictment, Hendricks was charged with conspiracy to provide material support and resources to a foreign terrorist organization and attempting to provide material support and resources to a foreign terrorist organization. The matter proceeded to trial on March 2, 2018. On March 20, 2018, the jury returned guilty verdicts on both counts of the superseding indictment. Hendricks was subsequently sentenced to 180 months incarceration. Hendricks appealed, and the Sixth Circuit affirmed his convictions on February 20, 2020. Hendricks timely filed this pending motion to vacate. The Government opposed the motion, and Hendricks replied in support. The Court now resolves the motion.

**II. Ground One**

In his first ground for relief, Hendricks claims that he is actually innocent of the charges against him based upon new discovered evidence. Initially, the Court notes that a freestanding claim of actual innocence is not cognizable on collateral review. *See Avery v. United States*, No. 17-5473, 2017 WL 9248941, at *3 (6th Cir. Nov. 13, 2017) (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)) (§ 2255 petitioner's "freestanding actual-innocence claim ... was subject to dismissal as not cognizable"); *United States v. May*, Case No. 3:16-cr-127, 2019 WL 7169132, at

*2 (S.D. Ohio Dec. 22, 2019) (report and recommendation) (citing *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993)) (freestanding actual innocence claim was non-cognizable in § 2255 proceeding). For this reason alone, Hendricks' claim must fail.

The Court also notes that Hendricks' sole basis for claiming innocence relies upon an unsworn letter from Amir Al-Ghazi. Al-Ghazi, a government witness during Hendricks' trial, allegedly wrote a letter stating that he had spoken with the person known as Abu Harb and that said person had a British accent. This unsworn statement directly contradicts Al-Ghazi's trial testimony that he had only ever communicated with Abu Harb through electronic means. Moreover, the letter itself does nothing to undercut the substantial evidence that the Government presented that demonstrated that Hendricks was in fact Abu Harb. As such, even if the Court were to consider the merits of Hendricks' claim of innocence, his claim would fail.

**III. Ground Two**

In his second ground for relief, Hendricks contends that his conviction was not unanimous. Specifically, Hendricks asserts that when the jury was polled, one juror was asked if the verdict was accurate and replied only, "Gentlemen." In response to this claim, the Government moved to correct the transcript of the proceeding. Upon listening to the audio of the proceeding, the court reporter agreed the transcript contained an error. Accordingly, the Court granted the motion and corrected the transcript to accurately reflect that all jurors concurred in the verdicts. The Court would also note that its independent memory of polling the jury also reflects that every juror agreed that the verdicts were accurate. Accordingly, Hendricks' second ground for relief lacks merit.

**IV. Ground Three**

In his third ground for relief, Hendricks claims that he received ineffective assistance of counsel. Hendricks' burden to establish an ineffective assistance of counsel claim is two-fold.

Under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), Hendricks must first show that counsel's performance was deficient. Pursuant to *Strickland*, "deficient" conduct is not simple error; counsel must have erred so "serious[ly] that counsel was not functioning as the 'counsel' guaranteed...by the Sixth Amendment." *Id*. at 687. When evaluating counsel's performance, a court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (internal citation omitted).

If deficient conduct is identified, Hendricks must then demonstrate that counsel's deficient performance prejudiced his defense. *Id*. at 692. To demonstrate prejudice, it is not enough to show that the "errors had some conceivable effect on the outcome of the proceeding" as any "act or omission of counsel would meet this test." *Id*. at 693. Instead, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693. In effect, counsel's performance must have "caused the defendant to lose where he would probably have won" by conduct "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis omitted).

Hendricks' third ground for relief contains a laundry list of the alleged shortcomings of his counsel. Hendricks contends that his counsel 1) failed to obtain proper security clearance, 2) failed to retain a digital forensics expert, 3) failed to retain an expert regarding the intelligence community, 4) failed to vigorously cross-examine the Government's computer expert, terrorism expert, and Detective Conley, 5) failed to call certain witnesses that Hendricks proposed, 6) failed to provide Hendricks all the discovery in the matter, 7) failed to request a suppression hearing, and

8) failed to investigate that someone else was using the "accepted" account.  In other words, Hendricks effectively argues that his counsel did nothing correctly.

With respect to security clearances, the Government has noted that both Hendricks' defense attorneys sought security clearances.  Ultimately, the decision whether to issue those clearances lies with the executive branch of the Government.  As counsel cannot control such a decision, the failure to obtain such a clearance cannot be deemed deficient performance.  Moreover, Hendricks has failed to demonstrate how obtaining such a clearance was necessary for his defense or how he was prejudiced from the failure.  Further, as this Court reviewed a Classified Information Procedures Act ("CIPA") motion and determined that no classified information was subject to discovery, Hendricks cannot as a matter of law demonstrate prejudice. Accordingly, the first prong of his ineffective assistance claim lacks merit.

Hendricks next asserts that his counsel was deficient for failing to retain a digital forensics expert.  However, counsel did in fact retain a digital expert, Asher Benjamin de Metz.  Following review of the expert's initial report, counsel made the determination not to present him as a witness. Such a decision falls well within the strategic decision-making discretion of counsel.  The Court also notes that Hendricks relies upon little more than speculation to support his claim of prejudice. Hendricks offers numerous opinions he believes the expert would have offered that have no basis in the record or any other evidentiary support.  As such, his second claim of ineffectiveness must also fail.

Hendricks next argues that his counsel should have retained an expert in the field of intelligence.  While it is unclear what type of expert Hendricks expected to be retained, it is clear that he cannot show prejudice from counsel's decision. Hendricks' primary argument appears to be that an expert could have opined that he was operating consistent with the actions of a

confidential source when he engaged in the activity for which he was indicted. However, it was undisputed in trial that Hendricks time as a source had been formally closed well before any of his activities at issue. As a result, this type of expert could not have offered any admissible or relevant evidence. Hendricks, therefore, cannot show the prejudice necessary to support this argument.

Hendricks also complains that his counsel did not vigorously cross-examine certain Government witnesses. Hendricks' own arguments in this subsection undermine his claim. While Hendricks contends that counsel was deficient, he also lists all of the areas in which counsel inquired that assisted in his defense. His sole arguments appear to be that counsel could have asked even more questions that Hendricks believes would have been beneficial. The undersigned presided over the trial of this matter and can say with full confidence that defense counsel offered a robust cross-examination of the Government's substantive witnesses. The defense focused upon a theory that attempted to create doubt about the identity of numerous online aliases including "accepted." Nothing about these examinations could properly be labeled as deficient.

Hendricks also finds fault with his counsel's decision not to call certain witnesses. However, the record supports counsel's decision and demonstrates no prejudice. Hendricks asserts that certain witnesses would have discussed the nature of the home he was building in Arkansas. The Government made no argument that this activity was unlawful, so testimony on the topic would have been irrelevant and therefore inadmissible. Similarly, testimony from a prior lawyer would have been excluded as hearsay.[1] As such, Hendricks cannot demonstrate deficient performance or prejudice related to this claim.

In his next argument surrounding ineffectiveness, Hendricks claims that his counsel did

---

1 Counsel's affidavit makes it clear that each of these witnesses were met and interviewed. It was only after counsel interviewed the witnesses that the decision was made not to present them at trial.

not provide him copies of full discovery in the matter. Initially, the Court notes that a protective order was in place due to the sensitive nature of certain materials. That court order precluded the production of certain discovery to Hendricks. While Hendricks suggests that some discovery related to his relationship with Detective Conley was not given to him, he fails to offer any argument about how this prejudiced his defense. His claim fails.

In his penultimate argument related to ineffectiveness, Hendricks claims that his counsel should have requested a continuance to investigate the evidence related to the continued used of the "accepted" account after Hendricks' arrest. Hendricks fails to identify any information that could have been learned from a further investigation and fails to identify any prejudice from counsel's decision to move forward with trial. His claim, therefore, lacks merit.

Finally, Hendricks argues that trial counsel was ineffective for failing to file a motion to suppress. Hendricks appears to assert that counsel should have moved to suppress the results of the traffic stop that occurred in Georgia. Hendricks appears to take issue with the fact that the stop was pretextual. However, Trooper Kent testified during trial that the stop was effectuated after he observed a traffic violation and that the vehicle was only searched after a canine alert. While Hendricks contends that no traffic violation occurred, he has offered no evidence that would contradict the sworn testimony of Trooper Kent. Accordingly, any motion to suppress would have lack merit. As such, counsel was not deficient for failing to file such a motion.

**V. Ground Four**

In his fourth ground for relief, Hendricks claims that his appellate counsel was ineffective. In large part, Hendricks claims that his counsel was ineffective for failing to raise the arguments that Hendricks has included in his current motion. As the Court has reviewed the merits of each of Hendricks' arguments, he can demonstrate no prejudice from counsel declining to raise those

arguments on appeal.

Additionally, Hendricks claims that counsel was ineffective for conceding on appeal that he had used the "accepted" accounts. However, contrary to this assertion, counsel did not concede facts. Rather, counsel highlighted that because of the standard of review on appeal, he was required to make argument while viewing the evidence in a light most favorable to the Government. This acknowledgment of binding law was not deficient performance. Accordingly, ground four lacks merit.

### VI. Ground Five

In his fifth ground, Hendricks claims that the Government engaged in prosecutorial misconduct. Specifically, Hendricks asserts that the Government made misleading comments about the events that occurred in Garland, Texas, that the prosecutor imposed her own personal credibility behind her opinion in her opening statement, that the prosecution misstated evidence, and that the prosecution fabricated evidence during closing argument.

"A claim of prosecutorial misconduct is evaluated in light of the record as a whole." *United States v. Dakota*, 197 F.3d 821, 828 (6th Cir. 1999).

> The Sixth Circuit has adopted a two-step approach for determining when prosecutorial misconduct warrants a new trial. Under this approach, a court must first consider whether the prosecutor's conduct and remarks were improper. If the remarks were improper, the court must then consider and weigh four factors in determining whether the impropriety was flagrant and thus warrants reversal. These four factors are as follows: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (citations omitted).

With respect to Garland, Texas, the Court notes that the superseding indictment contained specific allegations about Hendricks and his activities related to Garland, Texas. As a result, the

Court allowed a limited amount of evidence and argument that was directly related to *Hendricks'* activities as they related to Garland. In resolving a motion in limine filed by defense counsel, the Court noted that the evidence did not "approach[] the line of being unduly prejudicial" and had "substantial probative value." Based upon that ruling, the Court cannot say that any of the Government's questions or commentary were improper, let alone constituted misconduct.

Hendricks next argues that the Government improperly stated during opening statements that Hendricks' time as a confidential source had ended "long" before the events in the indictment. Hendricks asserts that this mischaracterized the evidence because his initial time as a source ended in the same year as the events in the indictment. While Hendricks may not like the descriptor chosen by the Government, the evidence supported the assertion that there was a time interval between the termination of his services and the events in the indictment. As such, the comment cannot be seen as improper.

Hendricks then argues that the Government misstated the evidence when it claimed that he had sought out "off-the-grid" land in the Western United States. However, Jeffrey Reese, real estate agent, testified at trial that he showed Hendricks remote, rural property that he described as "off grid, no running water" types of parcels. Therefore, the Government's statements were a proper commentary on the evidence.

Hendricks next argues that the Government violated certain discovery obligations. Specifically, Hendricks claims that the Government withheld exculpatory evidence that was related to one of its witnesses, Janet Miller. However, counsel for Hendricks admit that these messages were provided by the Government during discovery. In fact, Miller was cross-examined about these messages by defense counsel. Accordingly, Hendricks cannot demonstrate any misconduct by the Government related to these messages.

Finally, Hendricks claims that the Government fabricated evidence during its closing argument. However, the Government's statement that suggested that Hendricks used the username Dontcatch17 to taunt law enforcement after he discovered he was under surveillance was based upon record evidence. Specifically, testimony from Steven Jane and Hamza Al-Ansari noted that their final communications were with Dontcatch17. As such, the Government's assertion that Hendricks chose that username to suggest that law enforcement would never catch him was a fair inference to be drawn from the record evidence.

Based upon the above, Hendricks has not shown any prosecutorial misconduct. His fifth ground for relief lacks merit.

### VII. Ground Six

In his final ground for relief, Hendricks alleges that the cumulative impact of the errors detailed above warrant relief. However, the Court has found no error in the other grounds for relief set forth by Hendricks. Accordingly, it follows that he cannot rely upon a theory of cumulative error.

### VIII. Conclusion

Based upon the above, Hendricks has failed to demonstrate any entitlement to relief. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

| | |
|---|---|
| January 23, 2024 | /s/John R. Adams |
| Date | John R. Adams |
| | U.S. District Judge |